# In the United States Court of Federal Claims

No. 19-757 L

Filed: February 11, 2025

_____

)
4023 SAWYER ROAD I, LLC, *et al.*,                )
                                                  )
                    *Plaintiffs*,                 )
                                                  )
        v.                                        )
                                                  )
THE UNITED STATES,                                )
                                                  )
                    *Defendant*.                  )
                                                  )
_____             )

*Mark Fernlund Hearne, II*, True North Law, LLC, St. Louis, MO, for Plaintiffs.

*Christopher Michael Chellis*, Trial Attorney, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., *with whom was Lisa Lynne Russell*, Deputy Assistant Attorney General, United States Department of Justice, Environment & Natural Resources Division.

## OPINION AND ORDER

**MEYERS, Judge**.

Presently before the court are Plaintiff landowners who claim the Government took their property interests in a railway corridor in Florida that was built to transport the Ringling Brothers Circus. A few months ago, the court addressed the claims of another group of landowners whose claims sprung from the same railway line and involved many of the same deeds as this case. *Barron v. United States*, 174 Fed. Cl. 114 (2024). Because there is no reason to reinvent the wheel for this case, the court applies the principles of law explained in *Barron* to this case as well. Because the railroad held fee simple title to some properties and easements over others, the court grants-in-part both cross-motions for partial summary judgment.

## I.    Background

This case pertains to 7.68 miles of the Venice Branch rail line in Sarasota County, Florida between milepost SW 890.29 and 884.70 and milepost AZA 930.30 and 928.21. ECF No. 115-1

at 5 (Def.'s Ex. 1).[1]  The railroad[2] filed a verified notice of exemption to abandon the Venice Branch with the Surface Transportation Board ("STB") on March 8, 2019.  *Id.* at 5-9.  On April 22, 2019, the Sarasota County Board of County Commissioners filed a request for public use and a request for interim trail use with the STB.  *Id.* at 34-37 (Def.'s Ex. 2).  The STB issued a Notice of Interim Trail Use or Abandonment ("NITU") on May 14, 2019.  *Id.* at 39-43 (Def.'s Ex. 3).  This action followed.

This case involves 214 Plaintiffs who claim the STB's issuance of the NITU effected a taking of their reversionary interests in the land underlying the railroad corridor.  ECF No. 111-1 at 1.  On December 18, 2024, the court bifurcated the claims of forty-seven Plaintiffs whose claims the Government does not dispute[3] and deferred ruling on the claims of another 124 Plaintiffs whose claims rely on the deeds at issue in *Barron v. United States*, which is currently on appeal to the Federal Circuit.  ECF No. 136.  Thus, the court addresses the remaining forty-three Plaintiffs' claims that rely on deeds, conveyances, or factual circumstances not previously addressed in *Barron*.

Thirty-eight Plaintiffs' interests in the railroad corridor arise from three documents: the Honore Palmer and Potter Palmer ("Palmer") conveyance, the Florida Mortgage and Investment

---

[1] Because many of the exhibits in this case include multiple documents without consecutive pagination, the court cites to the pagination in the ECF header for all documents other than the Parties' briefs.

[2] Because the specific railroad to which the original conveyances were made is generally not material to the outcome of this case, the court refers to "the railroad" unless the specific railroad is important to the resolution of an argument.

[3] The Government does not oppose Plaintiffs' motion for partial summary judgment for those forty-seven Plaintiffs who are successors-in-interest to Adrian Honore.  Accordingly, the court grants Plaintiffs' motion as to the successors-in-interest to Adrian Honore: 4023 Sawyer Road 1, LLC; Julia R. Adkins and Austin C. Murphy; Randal S. and Joyce S. Albritton; Louis L. Alderman, Jr., as Trustee of the Louis L. Alderman 2013 Revocable Trust; Bradley S. and Susan B. Anderson; Geoffrey L. Bolton; Nicholas J. and Danette L. Boris; Endia K. and Gary Callahan; Martin Carrillo-Plata; John and Joanne Cisler; Steven R. and Virginia M. Courtenay; Elise J. Duranceau; William and Brooke Grames; Vincent and Karen Guglielmini; Noel K. Harris; Angelo and Sarah J. Hoag; Larry E. Hudspeth; Daniel L. and Kristin Jadush; Judy H. Johnson; Kenneth J. and Margaret A. Kellner; Joseph R. Knight; Patrick J. and Lisa A. Loyet; Kassandra Luebke and Elaine Luebke; Thomas W. Marchese; Reuben S. and Kathy J. Martin; Jason J. and Karen McGuire; Sue Moulton; Timothy and Mary Murphy; James Kirt, Nicholas James and Christopher Andrew Nalefski; Perry M. and Pamela S. O'Connor; Sueko O'Connor; Michele and Dorothy Ann Paradiso; Thomas Pearson; Todd A. and Carmen Perna; Patricia Lynne Pitts-Hamilton; Pro Properties, LLC; Justin M. Reslan; Allen B. and Mary Ann E. Rieke; Michael A. Ritchie; Chad, Grace, and Robert Schaeffer; Faith H. Simolari, As Trustee of the Philip Simolari Revocable Trust; Russell S. Strayer; James H. and Glenda G. Thornton; Kenneth D. and Susan K. Wells; David A. and Anna I. Ruiz-Welsher; Zbigniew and Wislawa Wrobel; and Stephen and Margaret Zawacki.

Company ("FMIC") conveyances recorded on pages 532 and 536[4] of Book 10, and the Charles Ringling Company ("Ringling") conveyance.

Three Plaintiffs claim property interests in land that the railroad acquired by possession, and they move for partial summary judgment that the NITU effected a taking of their reversionary interests in that land.  ECF No. 111-1 at 73-75.  The Government opposes summary judgment for these three Plaintiffs because, it argues, further factual development is necessary on these Plaintiffs' claims, Plaintiffs have not made the requisite showing of property interests in the land, and the railroad obtained fee simple title to the land via adverse possession.  ECF No. 115 at 30-31; ECF No. 127 at 9-10.

The Parties do not agree which document governs the claims of the remaining two Plaintiffs.  ECF No. 140.

## II.   Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rules of the Court of Federal Claims ("RCFC") 56(a).  The movant has the initial burden to show that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A "genuine" dispute of material fact exists where "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a "material" fact is one "that might affect the outcome of the suit under the governing law," as opposed to "disputes that are irrelevant or unnecessary."  *Id.*

If the movant meets its initial burden, the burden shifts to the nonmovant to show a genuine dispute of a material fact.  *Id.* at 256-57.  The nonmovant can do this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).  And while "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor[,]" *id.* at 255, the nonmovant's evidence must be "significantly probative" and more than "merely colorable" to defeat summary judgment, *id.* at 249-50.

## III.   Discussion

### A.   Rails-to-Trails Takings Actions

"[T]o preserve shrinking rail trackage," Congress enacted the National Trails System Act Amendments of 1983 to allow "converting unused rights-of-way to recreational trails."  *Preseault v. Interstate Com. Comm'n* (*Preseault I*), 494 U.S. 1, 5 (1990) (footnote omitted); *see also* 16 U.S.C. § 1241 *et seq.*  The Trails Act does so "through a process known as

---

[4] Like the Parties, the court refers to these as the FMIC 532 and 536 conveyances.

'railbanking.'" *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004). "Railbanking maintains the STB's jurisdiction over the dormant corridor, but allows a third party to assume the . . . responsibilities of the right-of-way, preserve the right-of-way for future rail use, and, in the interim, convert the corridor into a recreational trail." *Chi. Coating Co. v. United States*, 892 F.3d 1164, 1167 (Fed. Cir. 2018) (citing *Preseault I*, 494 U.S. at 6-7); *see also Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1370 (Fed. Cir. 2009) (citing 16 U.S.C. § 1247(d)).

Railbanking typically begins with the railroad filing a standard abandonment application or requesting an exemption from filing the application. *Caldwell*, 391 F.3d at 1229; *Chi. Coating*, 892 F.3d at 1167 (citing 49 C.F.R. §§ 1152.29, 1152.50). The railbanking process then diverges from the abandonment process when "the railroad and trail operator indicate willingness to negotiate a trail use agreement, [so] the STB stays the abandonment and issues" a NITU. *Caldwell*, 391 F.3d at 1229-30 (citing 49 C.F.R. § 1121.4). The NITU "operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." *Id.* at 1233-34; *Ellamae Phillips Co.*, 564 F.3d at 1370 ("Congress provided in the [Trails] Act that conversions to trail use that were subject to reactivation of rail service on the route did not constitute abandonment." (citing 16 U.S.C. § 1247(d))).

"The operation of the Trails Act is subject to the Fifth Amendment . . . ." *Rogers v. United States* (*Rogers I*), 90 Fed. Cl. 418, 427 (2009) (citing U.S. Const. amend. V). A taking question arises "in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests." *Preseault I*, 494 U.S. at 8. Thus, a "taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Caldwell*, 391 F.3d at 1228 (citing *Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1543 (Fed. Cir. 1996) (en banc)); *see also Rogers I*, 90 Fed. Cl. at 427.

At issue here is "whether the landowners had property interests in the right-of-way and whether the Government's actions constituted a taking of those interests" because "[i]n any takings case, 'only persons with a valid property interest at the time of the taking are entitled to compensation.'" *Rogers I*, 90 Fed. Cl. at 428 (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)). To determine whether the Government took Plaintiffs' property interests, the court must resolve three questions: (1) "did the [r]ailroad . . . obtain fee simple [absolute] estates;" (2) if not, were the terms of the railroad's property interests "limited to use for railroad purposes, or did they include future use as public recreational trails"; and (3) even if the railroad's property interests "were broad enough to encompass recreational trails, had these [property interests] terminated prior to the alleged taking so that the property owners at that time held [unencumbered] fee simples." *Preseault II*, 100 F.3d at 1533.

This case turns on the first two questions. Under the first question, "[i]f the railroad company owns the land in fee simple [absolute], then the Government cannot have committed a taking and the analysis ends." *Chi. Coating Co.*, 892 F.3d at 1170 (citing *Preseault II*, 100 F.3d at 1533). And under the second question, there is a taking if the property interest "granted to the railroad under state property law is not broad enough to encompass a recreational trail." *Caldwell*, 391 F.3d at 1229.

To answer these questions, the court analyzes "the property rights of the parties in a rails-to-trails case under the relevant state's law." *Castillo v. United States*, 952 F.3d 1311, 1319 (Fed. Cir. 2020); *Chi. Coating Co.*, 892 F.3d at 1170 ("[W]e must apply the law of the state where the property interest arises."). Here, the court applies Florida law.

### B.    Principles of Deed Construction under Florida Law

This court recently distilled the principles of deed construction under Florida law in two rails-to-trails takings actions, *Barron v. United States*, 174 Fed. Cl. 114 (2024), *appeal docketed*, No. 25-1179 (Fed. Cir. Nov. 14, 2024) and *Kent v. United States*, Nos. 15-365 L, 18-1591 L, 2025 WL 227490 (Fed. Cl. Jan. 17, 2025). The court applies the same principles of Florida law that it explained at length in *Barron* to this case.

To recap, under Florida law, the intent of the grantor "governs the interpretation" of a conveyance. *Barron*, 174 Fed. Cl. at 122 (internal quotation marks omitted) (quoting *Rogers v. United States* (*Rogers III*), 107 Fed. Cl. 387, 393 (2012)). Courts look to the language of the conveyance to discern that intent, "both as to the character of [the] estate and the property attempted to be conveyed." *Id.* (internal quotation marks omitted) (quoting *Rogers III*, 107 Fed. Cl. at 393). If the language is unambiguous, then the court must discern the grantor's intent from that language. *Id.* (quoting *Saltzman v. Ahern*, 306 So. 2d 537, 539 (Fla. Dist. Ct. App. 1975)).

"'No stock words or phrases are required' to indicate what estate and property the grantor intends to convey; rather, 'it is only necessary that such words be employed as will show the grantor's intent.'" *Id.* (quoting *Seaboard Air Line Ry. Co. v. Dorsey*, 149 So. 759, 761 (Fla. 1932)). While not required, certain language indicates the grantor intended to transfer a fee simple estate: "an expansive granting clause that lacks any restrictive or limiting clauses," a description of "the interest conveyed as 'land,'" and "[c]ovenants warranting title." *Id.* at 122-23. On the other hand, "a granting clause with a reversionary clause or restrictive language limiting the use of the property indicates the grantor intended to convey only an easement." *Id.* at 123 (citing *Rogers I*, 90 Fed. Cl. at 430-31). Language that describes the interest conveyed as a "right-of-way" is not determinative of whether the grantor intended to convey an easement or a fee simple estate; rather, the grantor's intent depends on the other unambiguous language in the conveyance. *See id.* ("Thus, when an interest is conveyed as a right of way, whether the railroad obtains a right or land depends on the intent of the parties as reflected by the deed of conveyance." (cleaned up) (quoting *Rogers v. United States* (*Rogers II*), 93 Fed. Cl. 607, 623 (2010))).

Plaintiffs raise three arguments regarding Florida deed construction here that differ from their briefing in *Barron*.

First, Plaintiffs contend that this court misapplied Section 689.10 of the Florida Statutes when the court relied on it for the proposition that Florida presumes a grantor transfers fee simple (or the greatest interest the grantor may convey) unless contrary language appears in the deed. ECF No. 111-1 at 27-29. According to Plaintiffs (without citation to Florida law), the statutory presumption does not apply to easements. ECF No. 122 at 18-19. In *Rogers v. United States* (*Rogers IV*), 184 So. 3d 1087 (Fla. 2015), the Florida Supreme Court explained that the effect of Section 689.10 "is that a deed is presumed to convey fee simple title, or whatever title

the grantor had power to convey, unless a contrary intention is shown by the language of the deed." *Id.* at 1095 n.5. While *Rogers IV* appeared to deal conclusively with this issue, the court took the opportunity to further research Plaintiffs' argument to confirm that the court's prior reliance on Section 689.10 was appropriate under Florida law.

The most analogous decision the court identified was *Holland v. State*, 388 So. 2d 1080 (Fla. Dist. Ct. App. 1980). In *Holland*, landowners "convey[ed] a strip of Santa Rosa County land to the State . . . for road right of way purposes." *Id.* at 1081. This grant was by warranty deed for compensation—i.e., it was a typical sale of property by a willing seller to a willing buyer. *See id.* Following the discovery of oil and gas, the grantors sought to limit the scope of the interest conveyed in the warranty deed to an easement that did not grant subsurface mineral rights. *Id.* Relying on Section 689.10, the court rejected the grantors' argument, recognizing that there were no words of limitation in the deed. *Id.* at 1081-82. And the fact that the deed stated it was "for right of way purposes" did not create any ambiguity as to the estate conveyed. *Id.* at 1081. The court explained that the grantors' arguments failed because they "propose[d] improperly to impeach 'the language of which the instrument is the repository.' That language expresses the estate conveyed. Section 689.10." *Id.* (internal citation omitted). To be clear, the Plaintiffs' argument that Section 689.10 does not apply to easements is irreconcilable with *Holland*, which, although not binding, is persuasive on the meaning of Florida law. When coupled with the clear statement in *Rogers IV*, the only conclusion that this court can reach is that Section 689.10 applies to conveyances like those in this case and *Barron*.

Second, Plaintiffs argue the Supreme Court, Federal Circuit, and Florida law dictate that a conveyance grants an easement when it describes the railroad's property interest as a "right-of-way." ECF No. 111-1 at 21-22, 50-51; ECF No. 122 at 12-17. Plaintiffs point to the Court's decisions in *Brandt Revocable Trust v. United States*, 572 U.S. 92 (2014), and *U.S. Forest Service v. Cowpasture River Preservation Association*, 590 U.S. 604 (2020). ECF No. 111-1 at 21-22, 50-51; ECF No. 122 at 12-14, 16. While both cases describe a "right-of-way" as an easement, neither case turns on Florida law, so neither case controls the outcome here. *See Brandt Revocable Tr.*, 572 U.S. at 95, 104-06 (concluding the railroad's right-of way under the General Railroad Right-of-Way Act of 1875 was an easement that terminated upon abandonment); *Cowpasture River Pres.*, 590 U.S. at 613-15 (deciding that the Forest Service's "right-of-way" in the Appalachian Trail was only an easement and not "federal lands" under the Leasing Act). Plaintiffs also point to the Federal Circuit's decision in *Barlow v. United States*, 86 F.4th 1347 (Fed. Cir. 2023). ECF No. 122 at 14-15. The *Barlow* decision also did not affect Florida law as the Federal Circuit applied Illinois law to determine that the words "right-of-way" indicated the conveyance of an easement. 86 F.4th at 1354-55.

The only case from this court that applied Florida law, and that Plaintiffs cite to support their point, is this court's decision in *Mills v. United States*, 147 Fed. Cl. 339 (2020). ECF No. 111-1 at 21-22, 51; ECF No. 122 at 14, 16. While the court stated "a 'right-of-way' for railroad purposes should be construed according to its natural meaning, i.e. '[t]he right to pass through property owned by another,'" *Mills*, 147 Fed. Cl. at 347 (alteration in original) (quoting *Right-of-Way*, *Black's Law Dictionary* (11th ed. 2019)), this statement arose in the analysis of a document with other language indicative of an easement, *see Barron*, 174 Fed. Cl. at 133 (distinguishing

the document analyzed in *Mills* from a document containing indicia of a fee simple estate transfer), and the court acknowledged that a railroad in Florida can acquire an easement or fee simple estate in a right-of-way, *Mills*, 147 Fed. Cl. at 347. Accordingly, *Mills* does not depart from other Florida cases; rather, it is consistent with the cases that hold the phrase "right-of-way" is not determinative of the grantor's intent. The court upholds its analysis of the phrase "right-of-way" from *Barron*. *See* 174 Fed. Cl. at 123.

But the District Court of Appeal of Florida has weighed in as well. As discussed above, *Holland* held that simply stating that a deed is for a right of way did not create an easement when there were no words of limitation in the deed. That court also considered the argument in *Robb v. Atlantic Coast Line Railway Co.*, 117 So. 2d 534 (Fla. Dist. Ct. App. 1960). Like here, the *Robb* court considered:

> Does the general warranty deed conveying fee simple title create
> less than the fee when it recites that the land is conveyed "for
> right-of-was [sic] purposes", without more? Except for the words
> "for right-of-way purposes", in all other respects Exhibit A is a
> general warranty deed conveying fee simple title.

*Id.* at 536. The court concluded that "a conveyance is not conditional when [the] purpose for the transfer is stated in the instrument of conveyance; *words of forfeiture must be present*." *Id.* at 536-37 (emphasis added). Thus, "[a] fee will pass by a deed containing a clause or recital which is merely declaratory of the use contemplated of the land." *Id.* at 537. In sum, the Florida courts and this court's prior cases applying Florida law are in accord that the phrase "right-of-way" alone is not sufficient to turn a conveyance of fee simple title into an easement. None of the cases applying other states' laws changes that outcome under Florida law.

Third, Plaintiffs ask the court to look beyond the language of the conveyances to "customs . . . when the instrument was created" and "the context in which the instrument was drafted." ECF No. 111-1 at 19; *see also id.* at 22-26 (describing the history and context of the conveyances); ECF No. 122 at 17, 20. Specifically, they contend "Florida, like other states, follows the rule that written language controls over preprinted boilerplate form language and that, if there is a conflict between the printed form and the handwritten or typewritten language there is an ambiguity concerning the parties' intent." ECF No. 111-1 at 25; *see also* ECF No. 122 at 20. The court does not look to the context of the conveyances here because "if the grantor's intent is unambiguous from [the] language of the deed, the court does not consider extrinsic evidence." *Barron*, 174 Fed. Cl. at 125 (citing *Rogers IV*, 184 So. 3d at 1100). The Florida authorities Plaintiffs cite support that the courts look to extrinsic evidence only when a document contains internally inconsistent language. *See McNair & Wade Land Co. v. Adams*, 45 So. 492, 493 (Fla. 1907) (looking to "the intent, and not the words" to reconcile inconsistent clauses within a conveyance); *Enter. Leasing Co. v. Demartino*, 15 So. 3d 711, 716 (Fla. Dist. Ct. App. 2009) (deciding the presence of inconsistent "written and preprinted provisions" raises a question of fact about the intent of parties entering a liability release). Thus, so long as the conveyance language is consistent and unambiguous, the court need not look to extrinsic evidence. Plaintiffs' citation to *Preseault II* for this argument is also of no avail because the Federal Circuit applied Vermont law, not Florida law. *Preseault II*, 100 F.3d at 1535-37 (applying Vermont law to conclude a form deed conveyed an easement instead of fee simple);

*Barron*, 174 Fed. Cl. at 128 ("Vermont law is not Florida law . . . ."). The court does not need to look beyond the executed conveyances here.

### C.    In Florida, Railroad Companies May Hold Fee Simple Title in Land Acquired for Building Railroads.

Plaintiffs raise largely the same arguments that the plaintiffs in *Barron* raised that the railroad could not, as a matter of law, acquire fee simple title in the railroad corridor. The court considered and addressed those arguments in *Barron*, and the court adopts its analysis from *Barron* to address Plaintiffs' arguments in the present case:

- "The fact that a railroad is a creature of state law does not prevent it from receiving fee simple title from a willing grantor," *Barron*, 174 Fed. Cl. at 125;

- *Preseault II*'s analysis based on Vermont law does not govern claims under Florida law, *id.* at 128;[5]

- "the strips and gores argument is inapplicable" to the conveyances in this case because "the language is clear," *id.* at 125 (cleaned up) (quoting *Rogers IV*, 184 So. 3d at 1099); and

- the *Rogers* quintet provide the governing legal principles applicable to these cases, *id.* at 123-24.[6]

---

[5] Plaintiffs also argue Florida law operates similarly to Missouri law and points to the Federal Circuit's analysis of Missouri law in *Behrens v. United States*, 59 F.4th 1339 (Fed. Cir. 2023). ECF No. 111-1 at 18. Like Vermont law, Missouri law does not govern this case, *Barron*, 174 Fed. Cl. at 128, so the Federal Circuit's analysis of Missouri law in *Behrens* does not govern the principles of Florida law in this case. More problematic for Plaintiffs is that the Florida Supreme Court explicitly rejected the argument (based on Missouri law) that "nominal consideration [is] a factor in discerning the grantor's intent to convey an easement rather than the fee simple title," as this court explained in *Barron*; rather, "[t]he law of Florida . . . is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed." *Barron*, 174 Fed. Cl. at 124-25 (quoting *Rogers IV*, 184 So. 3d at 1097).

[6] Plaintiffs challenge Judge Williams's analysis of the deeds' language "excepting" a right-of-way. ECF No. 111-1 at 51-52. As this court explained in *Barron*, the Florida Supreme Court and Federal Circuit agreed with Judge Williams's analysis of the deeds, so the court will not hold to the contrary here. 174 Fed. Cl. at 123-24 ("[T]his court adheres to Judge Williams's application of Florida law in construing deeds, which the Federal Circuit and the Florida Supreme Court agreed with too."); *see also Rogers IV*, 184 So. 3d at 1095 ("We need not discuss the language of the deeds in this case in detail . . . because the Court of Federal Claims did a thorough job of it in reaching the conclusion that the deeds by their language appeared to convey fee simple title. The deeds in question in this case included all the formal statements needed to show that the land was purchased and that the deeds granted fee simple title."); *Rogers v. United States*, Nos. 2013-5098, 2013-5102, slip op. at 5 n.1 (Fed. Cir. filed July 21, 2014) ("While the

In sum, railroads may acquire fee simple title under Florida law, so the court still must discern "what the grantors intended to convey in an unambiguous conveyance." *Barron*, 174 Fed. Cl. at 125 (citing *Rogers IV*, 184 So. 3d at 1094-95). With this understanding of the applicable Florida property law, the court turns to the property interests at issue in this case.

### D.    The Deeds

The court turns first to the three conveyances that govern thirty-eight Plaintiffs' claims.

####     1.    The Palmer Conveyance

Plaintiffs Thomas M. Fay and Joyce R. Fay ("Fays") argue the Palmer conveyance transferred only an easement to the railroad.[7] ECF No. 111-1 at 63. The Government does not raise any arguments regarding the construction of the Palmer conveyance, which provides:

> This Indenture[] . . . Between Honore Palmer and Potter Palmer[]
> . . . and the TAMPA SOUTHERN RAILROAD COMPANY[] . . .
>
> WITNESSETH: that [Honore Palmer and Potter Palmer], for and
> in consideration of the sum of [blank] of lawful money of the
> United States of America, to them in hand paid by the [railroad],
> . . . have granted, bargained, sold, aliened, remised, released,
> conveyed, and confirmed, and by these presents do grant, bargain,
> sell, [alien], remise, release, convey, and confirm unto the
> [railroad], and its successors and assigns, upon the terms and
> conditions hereinafter set out, all of these certain tracts or parcels
> of land . . .
>
> [The document describes the conveyed land.]
>
> Together with all and singular, the tenements, hereditaments and
> appurtenances thereunto belonging or in anywise appertaining, and
> the reversions reminders, rents, issues, and profits thereof and else
> all the estate, right, title, interest, dower, and right of dower,
> property possession, claim, and demand whatsoever of [Honore
> Palmer and Potter Palmer], both in law and in equity of in and to

---

Appellants dispute whether the deeds appear on their face to transfer a fee simple interest in the properties at issue, like the Court of Federal Claims before us, we conclude that they do.").

[7] The Government claims that the parcels controlled by the Palmer conveyance are controlled by the FMIC 536 conveyance. ECF No. 115 at 15 n.4. The Government states, "Plaintiffs agree," *id.*, but the document that the Government cites for their agreement, ECF No. 111-3 (Pls.' Ex. 1), still maintains that the Palmer conveyance governs the Fays' claims. ECF No. 111-3 at 5 (Pls.' Ex. 1). The Government did not challenge Plaintiffs' arguments at oral argument that the Palmer conveyance controlled the Fays' claims. ECF No. 143 at 7, 33, 36 (Hr'g Tr. 7:7-22, 33:3-6, 36:3-10). Thus, the Palmer conveyance governs the Fays' claims.

the above granted premises with the hereditaments and appurtenances.

This deed is given for the sole purpose of transferring to said grantee [Tampa Southern Railroad Company] a right of way for railroad purposes and upon the express provision that said grantee shall construct its railroad from Bradenton to Sarasota, Florida, over said right of way within twenty four months from the date of this instrument. Should said grantee not construct said railroad as herein set out, or should any part of the said land not be used for railroad purposes, or should some at any time be abandoned for railroad purposes, than the land is so abandoned for such purposes, or not used for such purposes shall revert to the grantors, their heirs, successors, or assigns.

TO HAVE AND TO HOLD the same in fee simple forever.

And [Honore Palmer and Potter Palmer] do covenant with the [railroad] that they are lawfully seized of the said premises, that they are free from all encumbrances and that they have good right and lawful authority to sell the same and [Honore Palmer and Potter Palmer] do hereby fully warrant the title to the said land, and will defend the same against the lawful claim of all persons whomever.

ECF No. 111-15 at 17-21 (Pls.' Ex. 10).

The Fays argue that the Palmer conveyance granted the railroad an easement primarily based on its similarities to the Honore conveyance. ECF No. 111-1 at 63. The Honore conveyances provides the following:

ADRIAN C. HONORE, . . . for and in consideration of the sum of one dollar ($1.00) and other good and valuable considerations this day to him in hand paid, the receipt whereof is hereby acknowledged, does hereby remise, release and forever quit claim unto the SEABOARD AIR LINE RAILWAY, . . . a right of way for railroad purposes over and across the following described parcels of land . . .

. . .

This conveyance is made upon the express condition, however that if the Seaboard Air Line Railway shall not construct upon said land and commence the operation thereon with one year of the date hereof of a line of railroad, or, if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the above described places and parcels of land shall

> ipso facto revert to and again become the property of the
> undersigned, his heirs, administrators and assigns.

ECF No. 111-15 at 2, 4 (Pls.' Ex. 8).  This court in *Rogers I* held this same language conveyed
only an easement, 90 Fed. Cl. at 430-31, and the Parties stipulated this language conveyed an
easement in the present case, ECF No. 115 at n.1.

The Honore and Palmer conveyances have some similarities, but they differ in key
respects.  Like the Honore conveyance, the Palmer conveyance: (1) uses the phrase "right of
way" to describe the property conveyed; (2) conditions the conveyance on the railroad
constructing and commencing operations on the property; and (3) includes a reversionary clause
that states if the railroad ceases to use the property for "railroad purposes," the property
"revert[s] to" the grantor.  On the other hand, the Palmer conveyance does not recount the
amount of consideration given by the railroad and includes more indicia of a transfer of a fee
simple estate.  Given these key differences, the court analyzes the Palmer conveyance anew.

### a)      The Property Interests

The Palmer conveyance grants the railroad at least a voluntary grant, and at most a fee
simple determinable.  Under either analysis, the Fays retain a reversionary interest in the railroad
corridor and the NITU prevented that reversion.

### (1)      Voluntary Grant

The Fays argue the Palmer conveyance was a voluntary grant.  ECF No. 111-1 at 60, 63.
The Palmer conveyance is dated 1923, ECF No. 111-15 at 17 (Pls.' Ex. 10), so the operative
voluntary grant statute is Section 4354 of the Florida Statutes (1920), *see also* ECF No. 111-1 at
60.  This statute states the following:

> Every railroad . . . shall be empowered: . . . [t]o take and hold such
> voluntary grants of real estate and other property as shall be made
> to it to aid in the construction, maintenance and accommodation of
> its road . . . but the real estate received by voluntary grant shall be
> held and used for purposes of such grant only.

Fla. Stat. § 4354(2) (1920).  As the court explained in *Barron*, "a voluntary grant or conveyance
is '[a] conveyance made without valuable consideration.'"  174 Fed. Cl. at 124 (quoting *Rogers
IV*, 184 So. 3d at 1094).

Here, the Palmer conveyance states it was made "for and in consideration of the sum of
[blank space] of lawful money of the United States of America, to them in hand paid by the
[railroad], at or before the ensealing and delivery of these presents, the receipt whereof is hereby
acknowledged."  ECF No. 111-15 at 18 (Pls.' Ex. 10).  The space is blank where the Parties
would have indicated the amount of consideration.  The conveyance does not otherwise state the
amount of consideration.  Thus, the face of the conveyance does not indicate the railroad gave

any consideration, even nominal consideration.[8]  As a conveyance without consideration, the Palmer conveyance falls under the purview of the voluntary grant statute.

(2)     Fee Simple Determinable

Even if the voluntary grant statute did not apply, the Palmer conveyance did not transfer fee simple absolute title.  As *Preseault I* explains, a taking in a rails-to-trails case may occur when a railroad holds "easements or similar property interests."  494 U.S. at 8.  One such similar property interest is a fee simple determinable.  *See Nat'l Wildlife Fed'n v. Interstate Comm. Comm'n*, 850 F.2d 694, 703 (D.C. Cir. 1988) ("Other rights-of-way are specifically limited to railroad use and may revert to the original owner (or a successor in interest) if railroad use is discontinued.  While these more limited interests, which do implicate the takings clause, take a variety of forms, the two most common types are the fee simple determinable and the easement."); *Nat'l Ass'n of Reversionary Prop. Owners v. STB*, 158 F.3d 135, 137 (D.C. Cir. 1998) ("Some land is obtained in fee simple, but often a railroad company holds a lesser interest in the land such as an easement or a fee simple determinable.").  Here, the Palmer conveyance language conveys a fee simple determinable under Florida law.[9]

In *Richardson v. Holman*, 33 So. 2d 641 (Fla. 1948), the Florida Supreme Court reviewed the following reservation in a warranty deed:

> Provided however, and this conveyance is made subject to and upon the express condition that should the [Tampa and Sulphur Springs Traction Company] cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall revert to and vest in the said [grantor] and his heirs and assigns.

*Id.* at 641-42.  The parties contested whether that language created a fee simple determinable or "an estate upon a condition subsequent."  *Id.* at 642.  The court determined the clause providing "[t]he title to said property shall revert to and vest in the" grantor sufficed as "words of reverter," so the grantor retained a reversionary interest in the property.  *Id.* at 643 (internal quotation marks omitted).  Further, "the possibility of reverter . . . materialized when the [grantee] ceased to use the lands for street railroad purposes."  *Id.*  And, under Florida law, the fee simple determinable's reversionary interest—the "possibility of reverter"—may be conveyed or devised.  *Id.* at 645.

---

[8] The Fays do not specifically argue that the lack of consideration in the Palmer conveyance renders it a voluntary grant, but Plaintiffs' briefing groups the Palmer conveyance with other conveyances as voluntary grants.  ECF No. 111-1 at 60, 63.

[9] The Parties also did not specifically argue whether the Palmer conveyance granted a fee simple determinable.  According to the Plaintiffs, it created an easement.  But the language here conveys more than a mere right of access.  In the end, whether the Palmer conveyance granted an easement or fee simple determinable is immaterial because in either case Plaintiffs retained the reversionary interest that was blocked by the NITU.

Here, the Palmer conveyance is not labeled a warranty deed, but it contains a warranty clause: the grantors "do hereby fully warrant the title to the said land, and will defend the same against the lawful claim of all persons whomsoever." ECF No. 111-15 at 21 (Pls.' Ex. 10). Further, the Palmer conveyance includes the phrase "TO HAVE AND TO HOLD in fee simple forever." *Id.* at 20. But it also contains an explicit reverter: "should any part of the said land not be used for railroad purposes, or should some at any time be abandoned for railroad purposes, then the land is so abandoned for such purposes, or not used for such purposes shall revert to the grantors." *Id.* Therefore, the Palmer conveyance's similarities to the conveyance in *Richardson* indicate it grants the railroad a fee simple determinable, and the Fays' possibility of reverter materialized when the railroad stopped railroad operations, just as the successor-in-interest's possibility of reverter materialized in *Richardson*.

### b)    The Scope of the Railroad's Property Interest

Under either analysis above, the railroad did not receive the fee simple absolute estate. The court must proceed to the second question of the *Preseault II* analysis: whether the railroad's property interest is broad enough to cover recreational trail use. 100 F.3d at 1533. It is not.

Both the voluntary grant statute and the express terms of the Palmer conveyance limit the railroad's interest to use of the property for railroad purposes. Fla. Stat. § 4354(2) (1920); ECF No. 111-15 at 20 (Pls.' Ex. 10). In *Richardson*, the possibility of reverter arose when the railroad ceased to use the land for "railroad purposes." 33 So. 2d at 643. In *Rogers I*, this court decided the express easement for "railroad purposes" in the Honore conveyance did not extend to recreational trail use. 90 Fed. Cl. at 432-33; *see also id.* at 432 ("[T]he usage of a right-of-way as a recreational trail is 'clearly different' from the usage of the same parcel of land as a railroad corridor." (quoting *Preseault II*, 100 F.3d at 1542)). Thus, the railroad's property interest, whether it exists by operation of the voluntary grant statute or as a fee simple determinable, is not broad enough to cover recreational trail use.

Because the railroad's property interest is not broad enough to cover recreational trail use, the court "need not reach the third prong of the *Preseault II* analysis." *Rogers I*, 90 Fed. Cl. at 432. Rather, the first two prongs of the *Preseault II* analysis establish the NITU effected a taking of the Fays' property interests in the land by creating "a new, unauthorized easement." *Id.* at 433. Accordingly, the court grants Plaintiffs' motion for partial summary judgment for the Fays and denies the Government's cross-motion for summary judgment for the Fays.

### 2.    The Florida Mortgage and Investment Company Conveyances

Thirty-one Plaintiffs[10] ("FMIC Plaintiffs") claim the railroad obtained only an easement under the FMIC conveyances. ECF No. 111-1 at 67-69. The Government argues these

---

[10] These Plaintiffs are: John M. Alvis; Catherine Teresa Gray; Joshua Carroll Hackney; Joe R. Hembree, As Trustee of the Joe R. Hembree Revocable Trust; Michael and Vivian Kravchak; Lewma Enterprise, Inc.; Cameron W. and Carol T. McGough; Rickey Smull; Irvin J. and Cynthia P. Spiegel; William A. and Jill Booth; John L. and Mary Allgyer and Levi and Tammy L. Lantz, Jr.; JB Holdings of Sarasota, LLC; Bob Allen and Lori Ann Jefferson; Bonnie A. Klein; Earnest R. Locklear, Carolyn B. Barclay, and Steven H. Locklear; Shannon Lugannani

conveyances transferred title in fee simple absolute to the railroad.  ECF No. 115 at 15-19.  The following language comes from the FMIC 536 conveyance:

> THIS INDENTURE[] . . . BETWEEN The Florida Mortgage and Investment Company . . . and the FLORIDA WEST SHORE RAILWAY . . . WITNESSTH:
>
> That the [FMIC], for and in consideration of the sum of One Dollar, to it in hand paid by the [Florida West Shore Railway], the receipt whereof in hereby acknowledged, has granted, bargained and sold to the [Florida West Shore Railway], its successors and assigns forever, the following described land to wit:
>
> Description of part of right-of-way to be obtained from Col. J.H. Gillespie:
>
> . . .
>
> Which plat or parcel of land is more clearly shown in red on the attached blue-print . . . and made in the office of the Assistant Engineer, Savannah, Ga., which blue-print is hereby made a part of this description.
>
> And the [FMIC] does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomever.

ECF No. 111-18 at 6-9 (Pls.' Ex. 16-A); ECF No. 115-3 at 6-8 (Def.'s Ex. 12); *see also* ECF No. 111-18 at 2-3 (Pls.' Ex. 16); ECF No. 115-3 at 11-12 (Def.'s Ex. 13).  The language of the FMIC 532 and 536 conveyances is the same other than the property descriptions, and the FMIC Plaintiffs make the same arguments regarding these two conveyances.[11]  ECF No. 111-1 at 67-69.  Thus, the court addresses these two conveyances together.

At oral argument, the Government compared the FMIC conveyances to the Neihardt deed examined in *Barron*.  ECF No. 143 at 33-36 (Hr'g Tr. 33:11-34:11, 35:10-21, 36:11-13).  First,

---

and Helen Elena Emegbagha; Callie Parsons; Marc and Leann Schlabach; John and Jaana Avramidis; David and Cynthia Gaul; Andrew and Jennifer Heath; Anna Marie Martin; Thomas McCall and Susan Coakley; Susan Schmitt, as Trustee of the Schmitt Revocable Trust; Raymond and Linda Wenck; Thomas and Michelle M. Dodson; Kimberly Dawn Hewitt, As Trustee for the Kimberly Dawn Hewitt Revocable Trust; The Oaks at Woodland Park Homeowners Assoc.; Anthony and Karen Puccio; Keith E. Rollins and Lisa J. Paxson-Rollins; and Brian T. Sanborn. ECF No. 111-3 at 10-11 (Pls.' Ex. 1).

[11] While the Government raises separate arguments for each FMIC conveyance in its briefing, ECF No. 115 at 15-19, the Government addressed these conveyances together at oral argument, ECF No. 143 at 33-34 (Hr'g Tr. 33:18-34:11), and the Government's arguments for each conveyance apply equally to both.

the expansive granting clauses use the same language: the grantor "has granted, bargained and sold to" the grantee "its successors and assigns forever, the following described land, to wit." *Compare* ECF No. 111-18 at 7 (Pls.' Ex. 16-A), ECF No. 115-3 at 6 (Def.'s Ex. 12), ECF No. 111-18 at 2 (Pls.' Ex. 16), *and* ECF No. 115-3 at 11 (Def.'s Ex. 13), *with* ECF No. 111-18 at 23 (Pls.' Ex. 17), *and* ECF No. 115-7 at 1 (Def.'s Ex. 1); *see also Barron*, 174 Fed. Cl. at 131 (describing the Neihardt deed's granting clause as "expansive"). Second, the Neihardt deed and the FMIC conveyances all describe the property conveyed as "land." *Compare* ECF No. 111-18 at 7, 9 (Pls.' Ex. 16-A), ECF No. 115-3 at 6, 8 (Def.'s Ex. 12), ECF No. 111-18 at 2-3 (Pls.' Ex. 16), *and* ECF No. 115-3 at 11-12 (Def.'s Ex. 13), *with* ECF No. 111-18 at 23, *and* ECF No. 115-7 at (Def.'s Ex. 1); *see also Barron*, 174 Fed. Cl. at 131 (explaining that describing property as land "indicates that Mr. Neihardt was selling land, not the right to access land"). Third, the conveyances include the same warranty clauses as the Neihardt deed: the grantor "does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever." *Compare* ECF No. 111-18 at 9 (Pls.' Ex. 16-A), ECF No. 115-3 at 8 (Def.'s Ex. 12), ECF No. 111-18 at 3 (Pls.' Ex. 16), *and* ECF No. 115-3 at 12 (Def.'s Ex. 13), *with* ECF No. 111-18 at 23 (Pls.' Ex. 17), *and* ECF No. 115-7 at 1 (Def.'s Ex. 1); *see also Barron*, 174 Fed. Cl. at 131.

Also at oral argument, Plaintiffs argued that the warranty clauses warrant what the grantor has given, here an easement, and nothing more, relying on *Preseault II*. ECF No. 143 at 27-29 (Hr'g Tr. 27:15-29:3). While *Preseault II* decided a warranty clause does not compel that a conveyance grants fee simple title under Vermont law, 100 F.3d at 1535-37, the Federal Circuit did not provide support for Plaintiffs' argument that a warranty clause in a deed warrants the grant of an easement rather than a fee simple estate, ECF No. 143 at 27-29 (Hr'g Tr. 27:15-29:3). Accordingly, the court maintains its analysis from *Barron* and the cases applying Florida law to consider a warranty clause as "another factor in favor of concluding [a grantor] sought to convey fee simple title." 174 Fed. Cl. at 131.

The FMIC conveyances differ from the Neihardt deed by referring to a "right-of-way to be obtained from Col. J.H. Gillespie." ECF No. 111-18 at 7 (Pls.' Ex. 16-A); ECF No. 115-3 at 6 (Def.'s Ex. 12); ECF No. 111-18 at 2 (Pls.' Ex. 16); ECF No. 115-3 at 11 (Def.'s Ex. 13). Regardless, the court explains *supra* Section III.B that the phrase "right-of-way" is not determinative of the railroad's property interest under Florida law. In light of the other indicia of a fee simple estate, the reference to the right-of-way in the FMIC conveyances does not alter the court's conclusion. The FMIC conveyances granted the railroad fee simple absolute.

The FMIC Plaintiffs make several arguments to the contrary. The FMIC Plaintiffs' arguments based on Section 689.10 of the Florida Statutes and the context of the conveyances do not change the court's conclusion for the same reasons discussed *supra* Section III.B. The court considers the FMIC Plaintiffs' remaining arguments below.

Like the Palmer conveyance, the FMIC Plaintiffs argue the FMIC conveyances are voluntary grants to the railroad. ECF No. 111-1 at 60, 68-69. "[A] voluntary grant or conveyance is '[a] conveyance made without valuable consideration,'" but nominal consideration does not indicate that "a conveyance was a voluntary grant." *Barron*, 174 Fed. Cl. at 124 (quoting *Rogers IV*, 184 So. 3d at 1094). The FMIC conveyances, unlike the Palmer conveyance, recite consideration of one dollar. ECF No. 111-18 at 2 (Pls.' Ex. 16); *id.* at 7 (Pls.'

Ex. 16-A); ECF No. 115-3 at 6 (Def.'s Ex. 12); *id.* at 11 (Def.'s Ex. 13).  Thus, "the deeds . . . recite valuable consideration, even if nominal, [so] they are grants by bargain and sale and are not voluntary grants under Florida law."  *Barron*, 174 Fed. Cl. at 125.  Further, the "amount of . . . consideration is irrelevant to the question of what the grantor conveyed to the railroad," *id.*, so nominal consideration does not affect the "*nature* of the interest" or the "*validity* of the conveyance," ECF No. 111-1 at 52 (emphasis in original).  In sum, the FMIC conveyances are not voluntary grants.

The FMIC Plaintiffs also argue the conveyances' references to blueprints support that the FMIC conveyances granted easements.  ECF No. 111-1 at 68; ECF No. 122 at 18.  The referenced blueprints indicate the railroad "had already surveyed and located the railroad right-of-way" over the land.  ECF No. 111-1 at 68.  Thus, "only after entering the owner's land," the railroad "obtain[ed] a written conveyance from the owner," so the FMIC Plaintiffs argue the conveyance operates as "a grant of an easement for the operation of a railway line, not title to the fee estate in the land."  ECF No. 122 at 18.  The court in *Barron* specifically addressed the argument that if a conveyance references land that the railroad previously entered, surveyed, and built upon, then the conveyance transfers only an easement.  174 Fed. Cl. at 127-28.  According to the Florida Supreme Court, the railroad occupying the property before the formal grant does not invalidate "a deed meeting all the formal requisites for passing fee simple title."  *Id.* at 128 (quoting *Rogers IV*, 184 So. 3d at 1100).  Rather, the railroad's property interest remains dependent on the intent of the grantor reflected in the unambiguous language of the conveyance.  *Id.* ("When a deed is unambiguous and sufficient on its face to show the grantor's intent as to the property described and the estate conveyed, extrinsic evidence is not admissible to vary the terms." (quoting *Rogers IV*, 184 So. 3d at 1100)).  The language of the FMIC conveyances transfers the fee simple estate, so the blueprints referenced in these conveyances do not change that conclusion.

Because the railroad obtained title in fee simple absolute under the FMIC conveyances, the FMIC Plaintiffs do not have property interests in the railroad corridor.  Accordingly, the NITU did not effect a taking, and the court grants summary judgment to the Government with respect to these thirty-one FMIC Plaintiffs.

### 3.    The Ringling Conveyance

Six Plaintiffs[12] ("Ringling Plaintiffs") claim the railroad obtained only an easement under the Ringling conveyance.  ECF No. 111-1 at 72-73.  The Government claims the railroad obtained title in fee simple absolute.  ECF No. 115 at 23-24.  The language of the conveyance is as follows:

> This indenture . . . between CHARLES RINGLING COMPANY, a
> Corporation of the State of Florida, . . . and TAMPA SOUTHERN

---

[12] These Plaintiffs are: Denise Doucette Erb and Lorraine E. Colby; Joyce P. and Julie Gwen Hardie; David Ivanov, as Trustee of the 2976 Poplar Street Land Trust; Lakewood Venture Capital LLC; Faye M. Rood; and Sarasota County Agricultural Fair Association.  ECF No. 111-3 at 12 (Pls.' Ex. 1).

RAILROAD COMPANY, a Corporation created and organized under the laws of the State of Florida[] . . .

Witnesseth, That the [Charles Ringling Company] for and in consideration of the sum of One Dollar and other valuable considerations, to it in hand paid, the receipt, whereof is hereby acknowledged, has granted, bargained, sold and conveyed to the [Tampa Southern Railroad Company], its successors and assigns, forever, the following described land in the County of Sarasota, State of Florida, to-wit:

. . .

A strip of land fifty (50) feet wide, being twenty-five (25) feet on each side of the center line of the Tampa Southern Railroad, as located and to be constructed through the South half . . .

. . .

TO HAVE AND TO HOLD the same in fee simple forever.

ECF No. 111-19 at 2-3 (Pls.' Ex. 18); ECF No. 115-10 at 2-3 (Def.'s Ex. 22).

The phrase "TO HAVE AND TO HOLD the same in fee simple forever" explicitly indicates the grantor intended to convey the fee simple estate to the railroad. *See Fla. Moss Prods. Co. v. City of Leesburg*, 112 So. 572, 573-74 (Fla. 1927) (rejecting arguments based on parol evidence that would limit the fee simple estate conveyed in a deed that included the phrase "to have and to hold the same in fee simple forever"). The Ringling Plaintiffs argue the court should read the fee simple language merely to indicate that a "servitude, such as an easement, can be inheritable," and they point to the Federal Circuit's analysis of similar language under Vermont law in *Preseault II*. ECF No. 111-1 at 73. This argument runs contrary to the plain language of the Ringling conveyance, which grants a fee simple estate under Florida law. *See Fla. Moss Prods.*, 112 So. at 573-74. Further, like the FMIC conveyances, the Ringling conveyance's granting clause uses expansive language, and the conveyance describes the property conveyed as "land." While it is true that the Ringling conveyance does not include a warranty clause, that is only a factor to consider when determining the grantor's intent, not a necessary element of a deed conveying fee simple absolute. Here, the language clearly shows that the railroad obtained title in fee simple to the land transferred by the Ringling conveyance.

The Ringling Plaintiffs parade many of the same arguments discussed above to support that the railroad received only an easement under the Ringling conveyance. The Ringling Plaintiffs' arguments based on Section 689.10 of the Florida Statutes and the context of the conveyances fail for the same reasons discussed *supra* Section III.B. Further, the Ringling conveyance, like the FMIC conveyances, recounts consideration in the form of one dollar and, therefore, is not a voluntary grant. Similarly, the conveyance's reference to an existing right of way that the railroad had already located does not limit the railroad to an easement because, as discussed *supra* Section III.D.2, the railroad's entry, survey, and construction upon land does not muddle the unambiguous terms of a conveyance.

The Ringling Plaintiffs also argue the conveyance transferred only an easement because it describes the property as a "strip of land . . . through" the platted lots.  ECF No. 111-1 at 72.  The court in *Barron* rejected a similar argument because this language "merely describes the location of the strip of land conveyed . . . and does not define or characterize the nature of the property interest conveyed."  174 Fed. Cl. at 128 (internal quotation marks omitted) (quoting *Rogers II*, 93 Fed. Cl. at 621).  Thus, the language describing the land as a "strip of land . . . through" the platted lots does not affect the estate conveyed to the railroad.

The Ringling conveyance granted the fee simple estate to the railroad, so the Ringling Plaintiffs' taking claims fall flat.  The court grants the Government's cross-motion for summary judgment for these six Ringling Plaintiffs.

### E.    The Railroad Interests That Lack Documentation

The Parties stipulated that no document governs the claims of three Plaintiffs—John W. and Christine L. Fordham ("Fordhams"), Bradley Blum Morrison, and Shirley P. Ramsey; rather, the railroad obtained its property interest in the corridor "By Possession."  ECF No. 111-12 at 16 (Pls.' Ex. 5).  The Fordhams, Morrison, and Ramsey argue the railroad obtained, at most, a prescriptive easement in the corridor.  ECF No. 111-1 at 74-75.  They further argue the burden is on the Government to prove the railroad obtained a prescriptive easement, and the Government cannot even meet that burden to establish the railroad holds any property interests in the corridor.  *Id.* at 75.  The Government argues the Fordhams, Morrison, and Ramsey improperly shifted their burden to prove their ownership interests in the corridor to the Government, and the railroad obtained a fee simple interest in the corridor by adverse possession.  ECF No. 115 at 31.

The Government argues that the railroad obtained fee simple title in the corridor by adverse possession.  *Id.* at 30-31.  A railroad's possession of land may result in the railroad acquiring the fee simple estate via adverse possession, or it may create an easement.  *See Rogers III*, 107 Fed. Cl. at 399 (citing *Downing v. Bird*, 100 So. 2d 57, 64-65 (Fla. 1958), to explain the differences between adverse possession and prescriptive easements).  Under Florida law, adverse possession requires possession that is "(i) actual and exclusive, (ii) continuous for seven years, (iii) open and notorious, and (iv) adverse under a claim of title."  *Whispell Foreign Cars, Inc. v. United States*, 106 Fed. Cl. 777, 784 (2012); *see also Rogers III*, 107 Fed. Cl. at 400 (citing Fla. Stat. § 1722 (1906)).  The burden is on the party claiming adverse possession "to prove that the . . .possession is adverse," and all elements of adverse possession "must be proved by clear and positive proof."  *Downing*, 100 So. 2d at 64.

Thus, the Government, as the party claiming adverse possession, bears the burden of proof on the adverse possession elements.  The Government did not come forward with its own evidence in support of adverse possession.  Rather, the Government opposed partial summary judgment for the Fordhams, Morrison, and Ramsey to seek further factual development on their claims.  ECF No. 115 at 30-31.  As the court explained in *Whispell Foreign Cars*, "the laying of tracks and the running of rail cars [] could be the result of either an adverse action by the railroad or a permissive one," so the government did not prove the railroad held the land adversely to the landowners and thus could not prove the railroad obtained title via adverse possession.  106 Fed. Cl. at 787.  Likewise, the Government here has not offered any evidence that the railroad's possession of the corridor was adverse to, rather than permitted by, the landowners.

Accordingly, the Government did not establish the railroad obtained fee simple title via adverse possession in the railroad corridor.

Because the Government does not prove the railroad acquired fee simple title via adverse possession, the greatest property interest that the railroad could have obtained is an easement. Two nineteenth-century Florida Supreme Court cases are particularly instructive here.[13]  In *Pensacola and Atlantic R.R. Co. v. Jackson*, 21 Fla. 146 (1884), the Florida Supreme Court considered a landowner's rights and the railroad's rights in land where the landowner had acquiesced to the railroad building on his land but later brought suit against the railroad.  *Id.* at 149-50.  The court decided the landowner retained "his title to the land," but he could not get injunctive relief to stop the railroad from operating on his land.  *Id.* at 152.  Rather, the landowner could seek damages from the railroad.  *Id.* at 153.  Likewise, in *Florida Southern R. Co. v. Hill*, 23 So. 566 (Fla. 1898), the Florida Supreme Court decided that a railroad's entrance upon land without the landowners' consent or initiating condemnation proceedings operates as "an implied sale of an easement in the land, induced, it may be true, by the compulsory features of the power of eminent domain."  *Id.* at 570.  This court in *Mills* decided *Pensacola* and *Florida Southern* illustrate the following principle of Florida law:

> [W]hen a railroad company takes land under color of its statutory charter but without an agreement and without a condemnation proceeding, it does not divest the landowners of title and . . . the railroad merely obtains perpetual use of the land for the purposes of its incorporation, i.e. an easement for railroad purposes.

*Mills*, 147 Fed. Cl. at 349-50.  Here, the Parties agree that no agreement governs the railroad's property interest in the property owned by the Fordhams, Morrison, and Ramsey, nor do they argue that the railroad initiated condemnation proceedings.  ECF No. 111-12 at 16 (Pls.' Ex. 5).  Thus, the railroad's possession of the corridor did not divest the Fordhams, Morrison, and Ramsey—or their predecessors-in-interest—of their title to the land, but created an easement for railroad purposes.

Because the railroad did not obtain fee simple title, the court considers whether its easement covers recreational trail use.  This court in *Mills* determined that an easement obtained by the railroad's possession of land under the railroad's charter was limited to "railroad purposes."  147 Fed. Cl. at 351.  Accordingly, "the conversion of the easement to a public recreational trail constitutes a new and unauthorized use."  *Id.*  Likewise, the railroad's easement in the present case does not extend to the use of the railroad corridor as a recreational trail.  As a result, the NITU effected a taking of the property interests held by the Fordhams, Morrison, and Ramsey, so the court grants partial summary judgment in their favor.

---

[13] The Fordhams, Morrison, and Ramsey cite to the Federal Circuit's decision in *Barlow v. United States*, 86 F.4th 1347 (Fed. Cir. 2023), to support their prescriptive easement argument. ECF No. 122 at 8.  The Federal Circuit applied Illinois law in *Barlow*.  86 F.4th at 1359-60.  The court here rests its conclusions on Florida law, so it does not review the arguments founded on *Barlow*.

### F.    The Pendley Document

The remaining two Plaintiffs, Mabel Brunton (subject to life estate of Wallace David Brunton) and Jeffrey Doyle, as Trustee of the Wallace David Brunton Testamentary Trust in place of Jeffrey C. Doyle ("Brunton"); and Gary L. Cathey and Victoria L. Goodrich ("Cathey-Goodrich") contend that the railroad held only an easement for railroad purposes that encumbered their property.  Throughout their briefing, the Parties argued about the legal significance of an unexecuted deed from Mr. O.H. Pendley to the railroad and whether the result was a conveyance of title in fee simple absolute or an easement.  ECF No. 111-1 at 70-71; ECF No. 115 at 26-28; ECF No. 122 at 9-11; ECF No. 127 at 8-9.  On the eve of argument, however, the Government informed the court and Plaintiffs that it now believed that these Plaintiffs were not Mr. Pendley's successors-in-interest; rather, the Government explained that it now believed that these Plaintiffs are successors-in-interest to the FMIC and their property covered in the FMIC 536 conveyance.  ECF No. 140.

The first thing the court must consider is whether the Pendley document conveyed fee simple title to the rail corridor to the railroad.  If the Pendley document conveyed title to the railroad, it would not matter if these Plaintiffs were successors to Pendley or FMIC because the railroad would have gotten fee simple title either way.  But if the Pendley document conveyed only an easement, then the existence of these Plaintiffs' claims turns on whether they are successors to Pendley or FMIC.  For several reasons, the Pendley document could not convey the fee simple estate to the railroad.

First, the Pendley document could not transfer the fee simple estate to the railroad under the Florida statute of frauds.  ECF No. 111-1 at 71.  The Pendley document itself is undated, but based on a declaration from the railroad's agent that is in the record, the Pendley document arose around 1923.  ECF No. 111-12 at 5 (Pls.' Ex. 4); ECF No. 115-10 at 11 (Def.'s Ex. 24).  The operative statute of frauds in Florida in 1923 was Section 3787 of the Florida Statutes (1920), which provided that:

> No estate or interest of freehold . . . in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by deed in writing, signed, sealed and delivered in the presence of at least two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of years, or by his agent thereunto lawfully authorized, . . . ; and no estate or interest . . . in, to or out of any lands, tenements, messuages or hereditaments, shall be assigned or surrendered unless it be by deed, signed, sealed and delivered in the presence of at least two subscribing witnesses, by the party so assigning or surrendering, or by his agent thereto lawfully authorized, or by the act and operation of law.

Fla. Stat. § 3787 (1920); *see also* ECF No. 111-1 at 71 (citing Fla. Stat. § 689.01, Florida's current statute of frauds that is similar to the 1920 statute).  The Pendley document is unsigned and not under seal.  ECF No. 111-12 at 2 (Pls.' Ex. 4); ECF No. 115-10 at 8 (Def.'s Ex. 24).

Under the operative statute of frauds, the Pendley document could not transfer fee simple title to the railroad.  *See Barclay v. Bank of Osceola Cnty.*, 89 So. 357, 358-59 (Fla. 1921) (applying Section 3787 to decide a deed "not under seal is ineffectual to convey the title of the grantor attempte[d] to be conveyed").  The declaration from the railroad that the Pendley document in the property records is materially the same as what Mr. Pendley signed does not satisfy the statute of frauds.

Second, the Government's argument is not helped by the railroad agent's declaration.  That declaration states "[t]his deed was not signed by the wife of O.H. Pendley, and was sent out for her signature but has never been returned."  ECF No. 111-12 at 5 (Pls.' Ex. 4); ECF No. 115-10 at 11 (Def.'s Ex. 24).  Thus, the declarant—the railroad's agent, ECF No. 111-12 at 5 (Pls.' Ex. 4); ECF No. 115-10 at 11 (Def.'s Ex. 24)—states that Mrs. Pendley, who also had ownership rights to the property, did not convey her interest to the railroad.  Thus, even if the railroad declaration could overcome the statute of frauds, it makes clear that Mrs. Pendley never signed any deed to the railroad, rendering the document ineffective.

Third, even if the court accepts the Government's argument that the Pendley document and accompanying declaration are the "best evidence" of the grantor's intent, ECF No. 115 at 27-28; ECF No. 127 at 8-9, credits the railroad agent's declaration that O.H. Pendley signed the Pendley document, ECF No. 111-12 at 5 (Pls.' Ex. 4); ECF No. 115-10 at 11 (Def.'s Ex. 24), and overlooks the fact that Mrs. Pendley did not sign it, the Pendley document recounts no consideration was given for the conveyance.  The Pendley document states the following:

> WITNESSETH: That [Pendley], for and in consideration of the sum of [blank] Dollars of lawful money of the United States of America, to [blank] in hand paid by the [railroad], at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, ha[s] granted, bargained, sold, aliened, remised, released, conveyed and confirm, unto the [railroad], and its successors and assigns forever, all of a certain tract or parcel of land situated, lying and being in the County of Sarasota, State of Florida, to-wit . . . .

ECF No. 111-12 at 2 (Pls.' Ex. 4); ECF No. 115-10 at 8 (Def.'s Ex. 24).  If this document is the best evidence of the grantor's intent, the grantor intended a voluntary grant to the railroad—the space is blank where this document should include the consideration paid by the railroad to the Pendleys.  ECF No. 111-12 at 2 (Pls.' Ex. 4); ECF No. 115-10 at 8 (Def.'s Ex. 24).  As the court explains *supra* Section III.D.1, a conveyance without consideration is a voluntary grant, and a voluntary grant to a railroad does not extend to recreational trail use.  Accordingly, the lack of consideration also prevents the Pendley document from conveying fee simple title to the railroad.

The Pendley document did not convey title to the railroad, but the railroad constructed a railway line across the Brunton and Cathey-Goodrich Plaintiffs' land.  As the court discusses *supra* Section III.E, a railroad that takes land without a valid conveyance or condemnation proceedings takes at most an easement for railroad purposes.  Because the Pendley document does not convey any interest in the property underlying the corridor, the Brunton and Cathey-Goodrich claims rise or fall on who their predecessor-in-interest was, which is disputed at this

point.  Therefore, the court can grant summary judgment on the legal effect of the Pendley document (none), but not on the Brunton or Cathey-Goodrich claims.

The court held a conference with the Parties and explained that a chain of title from Brunton and Cathey-Goodrich back to either the Pendleys or FMIC will be necessary to determine whether these claims can survive.  The court, therefore, grants-in-part Plaintiffs' motion for partial summary judgment insofar as the Pendley document did not convey title to the railroad.  The court defers ruling on whether these Plaintiffs are successors-in-interest to the Pendleys or the FMIC until that issue is developed through the chain of title that the court directed the Parties to file.

## IV.    Conclusion

For the foregoing reasons, the court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiffs' Motion for Partial Summary Judgment, ECF No. 111; and **GRANTS-IN-PART** and **DENIES-IN-PART** the Government's Cross-Motion for Partial Summary Judgment, ECF No. 115.

The court **GRANTS-IN-PART** and **DEFERS-IN-PART** Plaintiffs' motion as to the "Pendley Plaintiffs"—Mabel Brunton (subject to life estate of Wallace David Brunton) and Jeffrey Doyle, as Trustee of the Wallace David Brunton Testamentary Trust in place of Jeffrey C. Doyle; and Gary L. Cathey and Victoria L. Goodrich.  The court **ORDERS** the Parties to file a notice that traces the Brunton and Cathey-Goodrich Plaintiffs' chain of title, with deeds in the chain attached as exhibits, to either the Pendleys or the FMIC.

The court **GRANTS** Plaintiffs' motion and **DENIES** the Government's cross-motion as to the successors-in-interest of Honore and Potter Palmer—Thomas M. and Joyce R. Fay.  The Parties will proceed to the damages phase for these Plaintiffs.

The court **GRANTS** Plaintiffs' motion as to the successors-in-interest to Adrian Honore and the Plaintiffs whose properties are encumbered by prescriptive easements: John W. and Christine L. Fordham; Bradley Blum Morrison; Shirley P. Ramsey; 4023 Sawyer Road 1, LLC; Julia R. Adkins and Austin C. Murphy; Randal S. and Joyce S. Albritton; Louis L. Alderman, Jr., as Trustee of the Louis L. Alderman 2013 Revocable Trust; Bradley S. and Susan B. Anderson; Geoffrey L. Bolton; Nicholas J. and Danette L. Boris; Endia K. and Gary Callahan; Martin Carrillo-Plata; John and Joanne Cisler; Steven R. and Virginia M. Courtenay; Elise J. Duranceau; William and Brooke Grames; Vincent and Karen Guglielmini; Noel K. Harris; Angelo and Sarah J. Hoag; Larry E. Hudspeth; Daniel L. and Kristin Jadush; Judy H. Johnson; Kenneth J. and Margaret A. Kellner; Joseph R. Knight; Patrick J. and Lisa A. Loyet; Kassandra Luebke and Elaine Luebke; Thomas W. Marchese; Reuben S. and Kathy J. Martin; Jason J. and Karen McGuire; Sue Moulton; Timothy and Mary Murphy; James Kirt, Nicholas James and Christopher Andrew Nalefski; Perry M. and Pamela S. O'Connor; Sueko O'Connor; Michele and Dorothy Ann Paradiso; Thomas Pearson; Todd A. and Carmen Perna; Patricia Lynne Pitts-Hamilton; Pro Properties, LLC; Justin M. Reslan; Allen B. and Mary Ann E. Rieke; Michael A. Ritchie; Chad, Grace, and Robert Schaeffer; Faith H. Simolari, As Trustee of the Philip Simolari Revocable Trust; Russell S. Strayer; James H. and Glenda G. Thornton; Kenneth D. and Susan

K. Wells; David A. and Anna I. Ruiz-Welsher; Zbigniew and Wislawa Wrobel; and Stephen and Margaret Zawacki.  The Parties will proceed to the damages phase for these Plaintiffs.

The court **DENIES** Plaintiffs' motion, **GRANTS** the Government's cross-motion, and **DIRECTS** the Clerk's Office to enter judgment for the Government on the claims of the following Plaintiffs:

1.     The successors-in-interest of the Florida Mortgage and Investment Company: John M. Alvis; Catherine Teresa Gray; Joshua Carroll Hackney; Joe R. Hembree, As Trustee of the Joe R. Hembree Revocable Trust; Michael and Vivian Kravchak; Lewma Enterprise, Inc.; Cameron W. and Carol T. McGough; Rickey Smull; Irvin J. and Cynthia P. Spiegel; William A. and Jill Booth; John L. and Mary Allgyer and Levi and Tammy L. Lantz, Jr.; JB Holdings of Sarasota, LLC; Bob Allen and Lori Ann Jefferson; Bonnie A. Klein; Earnest R. Locklear, Carolyn B. Barclay, and Steven H. Locklear; Shannon Lugannani and Helen Elena Emegbagha; Callie Parsons; Marc and Leann Schlabach; John and Jaana Avramidis; David and Cynthia Gaul; Andrew and Jennifer Heath; Anna Marie Martin; Thomas McCall and Susan Coakley; Susan Schmitt, as Trustee of the Schmitt Revocable Trust; Raymond and Linda Wenck; Thomas and Michelle M. Dodson; Kimberly Dawn Hewitt, As Trustee for the Kimberly Dawn Hewitt Revocable Trust; The Oaks at Woodland Park Homeowners Assoc.; Anthony and Karen Puccio; Keith E. Rollins and Lisa J. Paxson-Rollins; and Brian T. Sanborn; and

2.     The successors-in-interest of the Charles Ringling Company: Denise Doucette Erb and Lorraine E. Colby; Joyce P. and Julie Gwen Hardie; David Ivanov, as Trustee of the 2976 Poplar Street Land Trust; Lakewood Venture Capital LLC; Faye M. Rood; and Sarasota County Agricultural Fair Association.

Pursuant to Rule 54(b), the court determines that there is no just reason for delay entering judgment for the Government as to the claims of successors-in-interest to the Florida Mortgage and Insurance Company and the Charles Ringling Company identified in Paragraphs 1 and 2 above.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge